## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-670 |
| | § | C.A. No. C-06-20 |
| JOSE ALEXANDER | § | |
| GRANADOS-VAQUIZ, | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER DISMISSING
## MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE,
## AND DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Jose Alexander Granados-Vaquiz's ("Granados") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 24),[1] which was received by the Clerk on January 17, 2006. The Court ordered the government to respond (D.E. 25), and the government filed a response in which it also moves for summary judgment, or alternatively, for dismissal. (D.E. 31). On May 24, the Clerk received Granados' reply (D.E. 32), which the Court has also considered.

As discussed in detail herein, Granados' claims are subject to dismissal because he waived his right to file them, pursuant to a valid and enforceable waiver. For this reason, discussed in more detail below, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Granados a Certificate of Appealability.

---

[1] Dockets entries refer to the criminal case, C-04-cr-670.

# I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II.  FACTS AND PROCEEDINGS

### A.      Summary of Offense[2]

On October 26, 2004, Granados drove a 2005 Chevrolet Equinox into the Sarita, Texas U.S. Border Patrol Checkpoint.  During the immigration interview, Granados stated that he was a naturalized citizen.  The service canine alerted to the rear of the vehicle, and Granados consented to a further search.  Once inside the checkpoint, Granados stated that he was actually a permanent resident alien.

In the secondary inspection area, the canine once again alerted to the rear of the vehicle.  The agent noticed that bolts on the rear bumper were missing and he also smelled the odor of silicone and fresh paint.  Upon removal of the rear bumper, two manufactured trap doors were located.  Within those doors were 14 bundles of cocaine (88% purity) with a net weight of 6.99 kilograms.  Granados was arrested.

A Drug Enforcement Administration ("DEA") agent arrived and took custody of the case.  Granados was interviewed and admitted that he drove from Raleigh, North Carolina, to pick up cocaine in Brownsville, Texas.  Granados also told the agent that he transported two prior loads of cocaine during the month of October 2004, and that he was paid $4,000

---

[2]  The offense conduct as set forth herein is derived from Paragraphs 4 through 8 of the Presentence Investigation Report ("PSR").

plus $1,000 expenses for each trip.  Granados agreed to cooperate and stated that he would attempt a controlled delivery at some apartments in Raleigh.

Granados conducted some recorded telephone calls with a conspiring individual in Raleigh, and informed that individual that he would be arriving in Raleigh on October 28, 2004.  On that date, Granados and DEA agents departed Corpus Christi, Texas to Raleigh via DEA aircraft.  Upon arriving in Raleigh, the defendant conducted a telephone call and advised that he was approximately two hours away from Raleigh.  Surveillance was established at the apartment where the delivery was to take place, and Granados was instructed to follow the agents to the apartment complex in a vehicle which contained the cocaine.  The defendant was provided with a pager transmitter so that the agents could monitor his conversations.  Granados followed the agents to the apartment complex, but then fled before entering the complex.

In his attempt to flee, he drove toward I-40, approximately 1/4 of one mile away.  Once on I-40, he began driving approximately 100 miles per hour, swerving in and out of traffic, and driving on the median in order to pass vehicles.  As the agents began to gain ground on him, he swerved the vehicle onto the grass median and parked the vehicle.  He fled on foot, crossing I-40 and causing drivers to slam on their brakes in order to avoid hitting him.  The agents followed him into some woods.  Granados removed the pager transmitter while in the woods and discarded the keys to the vehicle.  Agents located him and immediately handcuffed him.  Granados attempted to make some last minute recorded

telephone calls with negative results.  The controlled delivery was then stopped.

**B.      Criminal Proceedings**

On November 23, 2004, Granados was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute approximately 6.99 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (D.E. 9). On January 3, 2005, Granados pleaded guilty pursuant to a written plea agreement.  (D.E. 15, 16).  In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive a three-level credit for acceptance of responsibility, and to recommend a sentence at the low end of the applicable guideline range.  (D.E. 16).  The plea agreement contained a voluntary waiver of Martinez's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.  The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 16 at ¶ 8) (emphasis in original).  The agreement was signed by both Granados and his counsel.  (D.E. 16).

4

During the rearraignment, the prosecutor outlined the plea agreements of Granados and another defendant, including a statement that the defendants "are told that they are waiving their rights to appeal, including their rights under Title 28, Section 2255." ((D.E. 27, Rearraignment Transcript (hereinafter "R. Tr.") at 17).   After that summary was given, the Court inquired:

> THE COURT: Is that your agreement?  Mr. Granados?
>
> DEFENDANT: Yes, Your Honor.

(R. Tr. 17).   The Court questioned Granados under oath at the rearraignment to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> THE COURT: The agreement that you have reached is an agreement with the United States Attorney's Office.  I am not part of that agreement.  The Unites States Attorney will make sentencing recommendations to me about your sentence.  I do not have to follow those recommendations.   If those recommendations are favorable to you and I do not follow them, you cannot take back your plea of guilty.  My sentencing decision will be the final and only decision in your sentence. That is because by this agreement you are giving up your right of appeal, you are giving up your right to have a jury participate in your sentence and you are giving up your right to later file any later [sic] petition to challenge your conviction or vacate your sentence or your conviction under Title 28, United States Code, 2255 or any other federal petition that would collaterally attack your sentence.  Do you want to give up your right of appeal?  Mr. Granados?
>
> DEFENDANT: Yes, Your Honor.
>
> ...

5

> THE COURT: Do you want to give up any right that you may have to have a jury participate in your sentencing? ... Mr. Granados?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: And do you want me to make all sentencing decisions under present law ... Mr. Granados?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: And do you want to give up your right to file any later 2255 petitions or any other petitions to collaterally attack your sentence or your conviction?  Mr. Granados?
>
> DEFENDANT: Yes, Your Honor.

(R. Tr. at 17-19).  It is clear from the foregoing that Granados' waiver was knowing and voluntary.  <u>See</u> Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on March 25, 2005.  At sentencing, defense counsel did not object to the PSR, and Granados testified that he had received a copy of the PSR, that he had read it and discussed it with his attorney, and that it was correctly written, such that no corrections needed to be made to it.  (D.E. 28, Sentencing Transcript (hereinafter "S. Tr.") at 2).  The Court agreed with the PSR that Granados qualified for "safety valve" relief.[3]  18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.   After granting that relief, his total offense level was 29.  Coupled with a criminal history category of I, his resulting

---

[3]  The safety valve allows the court to sentence certain defendants without regard to the statutory minimum, which, in this case, would have been 120 months.  U.S.S.G. § 5C1.2.

guideline range was 87 to 108 months.  The government recommended a sentence of 87 months, and defense counsel argued for the same. (S. Tr. at 2-5).

The Court sentenced Granados to 87 months in the custody of the Bureau of Prisons, to be followed by a four-year term of supervised release, and imposed a $100 special assessment. (D.E. 22, 23).  Judgment of conviction and sentence was entered March 30, 2005.  (D.E. 23).  Consistent with his waiver of appellate rights, Granados did not appeal.  Granados' timely § 2255 motion was received by the Clerk on January 17, 2006. (D.E. 24).

### III.  MOVANT'S ALLEGATIONS

In his motion, Granados asserts two ineffective assistance of counsel claims.  First, he claims that his counsel was ineffective because he  did not negotiate a plea agreement that included a provision that Granados should receive a mitigating role adjustment.  Second, he argues that his counsel was ineffective at sentencing for failing to argue for a mitigating role adjustment.  For the reasons set forth herein, Granados' claims fail.

### IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir.

7

1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

## B.   Granados' Waiver of § 2255 Rights

The Court does not reach the merits of Granados' claims because they fall within the scope of his waiver.  See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).  First, his claim of ineffective assistance of counsel at sentencing falls clearly within the scope of his waiver, and is thus barred.  United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself").

Similarly, his claim with regard to his plea falls within the scope of his waiver, too. It is true that a defendant's claim of ineffecitve assistance with regard to his waiver or the plea itself could fall outside the scope of a § 2255 waiver.  See White, 307 F.3d at 343-44. Granados' claim, however, is not a direct challenge to the validity of his plea or waiver. He claims that his counsel was ineffective for failing to obtain an agreement concerning a mitigating role adjustment, but he does not claim that his plea itself or that his waiver was unknowing or involuntary.  Accordingly, this claim, too, falls within the scope of his waiver

and is barred by it.

In his reply, however, Granados insists that his waiver does not bar his claim because he did not explicitly waive his right to bring an ineffective assistance of counsel claim. (D.E. 32 at 7 ("Petitioner's waiver did not specifically mention the Sixth Amendment or the right to effective assistance of counsel, and the colloquy with the court at the time of the re-arraignment hearing was no more specific than the general written waiver.").  Based on this, he claims that the waiver was not "knowing or voluntary."  The Court disagrees that this claim falls outside the scope of his waiver or that the Court's failure to specifically admonish him that he was waiving potential ineffective assistance claims renders his waiver unknowing or involuntary.  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up); see also R. Tr. at 18-19 (Granados' testimony that he understood he was giving up his right to § 2255 relief).

Similarly, there is no doubt that his plea itself was knowing and voluntary.  At his rearraignment, Granados testified in open court that he had received a copy of his indictment and discussed it with his attorney. (R. Tr. at 6-7.  He testified that he had enough time to discuss his case with his attorney, that he was satisfied with his attorney's services, that his attorney had answered all of his questions and made himself available to him, and that his attorney was following Granados' instructions. (R. Tr. at 8-9).  The Court informed Granados of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights.  (R. Tr. at 11-

9

14).  The Court informed Granados of the charge against him and Granados testified that he understood the charge.  (R. Tr. at 14).

Consistent with Rule 11, Fed. R. Crim P., the Court explained to Granados the maximum punishment that he might receive.  Specifically, the Court informed him that he could be sentenced to a maximum of life in prison and a maximum fine of $4 million.  The Court also informed him that there was a mandatory $100 special assessment, and a minimum supervised release term of five years.  (R. Tr. at 13).  The Court also explained that the offense included a mandatory minimum sentence of ten years. (R. Tr. at 14-15).  Granados testified that he understood.  (R. Tr. at 13-15).  Granados further testified that no one had threatened him or forced him to plead guilty, that no one had promised him leniency for pleading guilty, and that it was his decision to plead guilty. (R. Tr. at 15).

Granados' sworn statements in open court are entitled to a strong presumption of truthfulness.  United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  Granados' sworn statements at the rearraignment show fully that he understood the rights he was giving up under the plea agreement, including his right to § 2255 relief.  See  Wilkes, 20 F.3d at 653.

In sum, the Court concludes that Granados' waiver of his right to file a § 2255 motion is valid and enforceable.  The Court further concludes that both of his stated claims

10

fall within that waiver.  Accordingly, his claims are not properly before the Court.  <u>See</u> <u>generally</u> <u>Wilkes</u>, <u>supra</u>; <u>White</u>, <u>supra</u>.

The Court also notes that, even if his claim of ineffective assistance of counsel with regard to his plea were properly before the Court, it would be subject to dismissal. Notably, there is no evidence in the record that any offer or agreement including a recommendation for a mitigating role adjustment would have been forthcoming from the government, even had his attorney requested it.  Moreover, his attorney's affidavit clearly indicates that he believed the government would never give such a concession in the plea agreement.  (D.E. 31, Exh. A at ¶ 6.  Finally, even if he had obtained an agreement from the government to recommend a minor role reduction, this Court would not have followed that recommendation.  <u>See</u> <u>United States v. Lujan-Sauceda</u>, 187 F.3d 451, 452 (5th Cir. 1999) (neither a defendant's status as a first time offender nor his claims to be a courier require an adjustment for minor participant status); <u>United States v. Buenrostro</u>, 868 F.2d 135, 137-38 (5th Cir. 1989) (affirming this Court's refusal to make a downward adjustment under § 3B1.2 for a drug courier).  Accordingly, Granados cannot show that he was suffered any prejudice as a result of the alleged deficiencies of counsel, and his ineffective assistance claim thus would also fail on its merits.  <u>See</u> <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001) (to prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was ***both*** deficient and prejudicial).

For all of the foregoing reasons, Granados' § 2255 motion is DENIED in its entirety.

## C.   Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Granados has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287

12

F.3d 325, 329 (5th Cir. 2002) (relying upon <u>Slack</u>, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right ***and*** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

This Court has addressed Granados' claims on procedural grounds, and concludes that Granados cannot establish at least one of the <u>Slack</u> criteria.  Specifically, jurists of reasons would not find debatable this Court's ruling that his waiver bars both of his claims. Accordingly, Granados is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the above-stated reasons, Granados' motion under 28 U.S.C. § 2255 (D.E. 24) is DISMISSED WITH PREJUDICE.  The Court also DENIES him a Certificate of Appealability.

Ordered this 14th day of June, 2006.

HAYDEN HEAD
CHIEF JUDGE

13